UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LOKERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>TUCKER, et al.,<br><br>    Defendants. | No. 2:24-cv-0494 DB P<br><br>ORDER |

Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action under 42 U.S.C. §1983. Before the court are plaintiff's first amended complaint[1] for screening and plaintiff's motion to proceed in forma pauperis. For the reasons set forth below, this court grants plaintiff's motion to proceed in forma pauperis and dismisses the complaint with leave to amend.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §1915(b)(1). By separate order, the court will direct

---

[1] Plaintiff filed his original complaint on February 15, 2024. (ECF No. 1.) Before the court screened that complaint, plaintiff filed a first amended complaint on March 4, 2024. (ECF No. 7.)

1

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. §1915(b)(2).

**SCREENING**

**I.    Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the

allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II.   Analysis**

   **A. Plaintiff's Allegations**

Plaintiff primarily complains of conduct that occurred in late 2021 and early 2022 when he was incarcerated at the California Health Care Facility ("CHCF"). Plaintiff identifies two defendants: Correctional Officers Tucker and Rueda. He also states that he is pursuing relief against a captain (hereafter "Captain Doe") and a lieutenant ("Lieutenant Doe") whose names he does not know.

Plaintiff alleges the following. In October 2021, plaintiff was housed in a yard with inmate McNeil. McNeil had a history of attacking other inmates and should have been housed in a higher security yard. The yard where plaintiff was housed was meant for inmates with health conditions requiring daily support from staff and many were in wheelchairs. McNeil was able-bodied and told plaintiff he had been placed on that yard for severe hypotension. (ECF No. 7 at 5.)

////

On October 31, 2021, McNeil threatened to "cut" plaintiff. McNeil's threat was overheard by defendant Rueda and a non-defendant nurse's assistant. The next day, November 1, McNeil "menac[ed]" plaintiff all morning. At 2:00 p.m. that day, McNeil attacked plaintiff. (ECF No. 7 at 6.)

On November 2, McNeil "continued to menace plaintiff all day." McNeil then attacked another inmate. When plaintiff tried to intervene, McNeil began assaulting plaintiff. Plaintiff received a mild concussion as a result. (ECF No. 7 at 6-7.)

On November 3, plaintiff was threatened by inmate Rodriguez. Defendant Rueda was standing nearby and ignored plaintiff's calls for help. After plaintiff informed a non-party officer about the threats, Captain Doe spoke to plaintiff. Captain Doe told plaintiff not to speak, said he knew what happened, and told plaintiff that if he misbehaved again he would be transferred. (ECF No. 7 at 6-7.)

On December 20, Lieutenant Doe insisted plaintiff sign a "marriage chrono." (ECF No. 7 at 7.) Plaintiff describes a marriage chrono as a document signed by the parties to an altercation in which they promise not to fight again. Plaintiff alleges that a party who refuses to sign a marriage chrono is moved from their building. Plaintiff states that he had already signed a marriage chrono after the first attack by McNeil. (Id. at 5-6.) Plaintiff does not explain why Lieutenant Doe asked him to sign the marriage chrono. Nor does plaintiff identify the other parties who signed, or were expected to sign, the marriage chrono. Plaintiff felt he had no choice but to sign the chrono. (Id. at 7.)

On February 16, 2022, McNeil was released from confinement to quarters. Plaintiff states that prison regulations required McNeil to have been confined for a longer period of time. On February 19, McNeil again began "menacing" and verbally threatening plaintiff. Two non-party officers observed the "altercation." Plaintiff later told Lieutenant Doe about the threats. Lieutenant Doe told plaintiff to talk with "the building officers, defendants Tucker and Rueda." Plaintiff talked with them the following day, February 20. They took no action to protect plaintiff from McNeil. (ECF No. 7 at 8-9.)

////

McNeil continued to "menace" plaintiff. Over the next twenty-eight days, plaintiff continued to inform defendants about the threats. On March 19, McNeil attacked plaintiff for a third time, resulting in a concussion and damage to plaintiff's teeth. (ECF No. 7 at 9-10.)

Finally, plaintiff makes several contentions about his transfers to various facilities, the prison system's failure to comply with plaintiff's "medical parole" and place him in a skilled nursing facility, and his placement in solitary confinement. Plaintiff contends the placement in solitary confinement at Kern Valley State Prison, where he is currently housed, was done in retaliation for plaintiff's "standing up to" defendants Tucker and Rueda's bullying. (ECF No. 7 at 13-15.)

For relief, plaintiff seeks damages, repair of the damage done to his teeth, transfer out of solitary confinement, and an order requiring the prison system to allow him to obtain his own accommodations for medical parole. (ECF No. 7 at 16.)

**B. Does Plaintiff State Claims for Relief?**

Initially, this court notes that shortly after plaintiff filed his first amended complaint, he filed a motion to amend that complaint. (ECF No. 8.) Plaintiff states that a portion of a sentence was inadvertently omitted from the first amended complaint. Plaintiff's motion will be granted. Plaintiff need not file a second amended complaint. This court will consider the first amended complaint to include the language: "About 15 minutes later, defendant captain arrived at building D3A" at the beginning of page 3-E.

**1. Failure to Protect**

**a. Legal Standards**

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted).

**b. Discussion**

**i. Captain Doe**

Plaintiff contends Captain Doe was responsible for yard policy, including where dangerous inmates would be housed. Had McNeil been housed on an appropriate yard, plaintiff and other disabled inmates with lower security classifications would not have been at risk of harm.

Plaintiff's allegations against Captain Doe are insufficiently specific to state an Eighth Amendment claim. Plaintiff alleges only that Captain Doe was aware plaintiff had been threated by inmate Rodriguez. Plaintiff does not allege he was harmed by Rodriguez. Plaintiff makes no allegations that Captain Doe knew about McNeil's attacks on plaintiff or knew that McNeil was threatening plaintiff. Plaintiff's broad allegation that he repeatedly told "defendants" about the threats before the third attack is vague. Plaintiff must allege facts showing how he made each defendant aware of those threats. Further, violations of prison policy do not state an Eighth Amendment claim. See Davis v. Scherer, 468 U.S. 183, 192 (1984); Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of a federal constitutional right). Plaintiff will be given the opportunity to file a second amended complaint to attempt to state a claim against Captain Doe.

### ii. Lieutenant Doe

Plaintiff alleges that Lieutenant Doe's insistence that plaintiff sign a "marriage chrono" in December 2021 led to the attack by McNeil in March 2022. Plaintiff does not explain the connection between those two things. Plaintiff also alleges that on February 19, 2022, he told Lieutenant Doe about McNeil's threats and Lieutenant Doe did nothing more than refer plaintiff to other officers. However, plaintiff does not allege specific facts showing that Lieutenant Doe in fact knew that plaintiff was at serious risk from McNeil over the next month or that Lieutenant Doe's referral of plaintiff to Rueda and Tucker was done with the knowledge that he was placing plaintiff in harm's way. Again, plaintiff's general allegations that he told "defendants" about the risk is insufficiently specific to state a claim. Plaintiff will be given the opportunity to file a second amended complaint to attempt to state a cognizable claim against Lieutenant Doe.

### iii. Officer Rueda

Plaintiff's allegations against Officer Rueda are more specific, but are also insufficient to state a cognizable Eighth Amendment claim. He alleges Rueda was aware of: (1) McNeil's threat on October 31, 2021; (2) inmate Rodriguez's threats on November 3, 2021; and (3) McNeil's threats on February 19, 2022. Plaintiff further alleges Rueda took no action to protect him after each of these threats. As discussed above, plaintiff's allegations regarding Rodriguez's threats do not show that any of the defendants were aware that plaintiff was at risk from inmate McNeil.

With respect to a failure to protect plaintiff from the first attack by McNeil, plaintiff shows only that Rueda was aware of one threat by McNeil on October 31. Plaintiff does not allege that Rueda was aware of McNeil's "menacing" plaintiff the morning of November 1 or that Rueda was present when McNeil attacked plaintiff that day. Based on plaintiff's allegations, this court finds Rueda cannot be assumed to have understood that the one threat posed an "excessive" risk to plaintiff on November 1. Plaintiff also alleges no further knowledge or conduct by Rueda to show that Rueda could have done something to prevent the November 2 attack by McNeil.

With respect to the third attack, plaintiff alleges that on February 20 he told Rueda about the threats McNeil made on February 19. However, again, plaintiff fails to show Rueda knew

about the prior attacks or that Rueda knew plaintiff was at risk from McNeil a month later when plaintiff was attacked for the third time. As discussed above, plaintiff's allegation that he told "defendants" about McNeil's threats during that month time period is not sufficiently specific.

Plaintiff will be given the opportunity to amend his complaint to attempt to state an Eighth Amendment claim against Rueda. Plaintiff is advised that if he alleges Rueda was aware that McNeil was "menacing" him, he must be more specific. Plaintiff must allege facts showing just what McNeil did or said that indicated he intended to harm plaintiff and that Rueda knew about McNeil's conduct.

### iv.    Officer Tucker

Plaintiff's alleges Tucker was aware of two things. First, plaintiff contends Tucker was told of the threat by inmate Rodriguez. As discussed above, that knowledge did not give Tucker a warning that plaintiff was at risk from McNeil. Second, plaintiff contends he told Tucker on February 20 about McNeil's threats the previous day. For the reasons stated above with respect to this allegation against defendant Rueda, plaintiff fails to state a cognizable Eighth Amendment claim. Plaintiff will be permitted to file a second amended complaint to attempt to do so.

### 2.    Plaintiff's Remaining Allegations

Plaintiff's remaining allegations do not state claims for relief. With respect to prison transfers, plaintiff is advised that he has no constitutional right to be housed in a particular prison. See Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983) (Prisoners have no constitutional right to incarceration in a particular institution.); see also Tyler v. Coggins, No. 1:10-cv-00098–AWI–MJS (PC), 2012 WL 285023, *2 (E.D. Cal. Jan. 31, 2012) (denial of requested transfer did not constitute sufficiently serious deprivation to satisfy first element of Eighth Amendment claim); Seidenfeld v. Rosales, No. CV 10-7004 PA (JCG), 2011 WL 835782, *2 (C.D. Cal. Jan. 20, 2011). Therefore, the fact he was transferred does not state a claim. Nor does plaintiff show that the refusal to permit him to choose a skilled nursing facility is a violation of his constitutional rights or that any of the defendants were involved in that decision.

To the extent plaintiff is alleging those transfers and his placement in solitary confinement were retaliatory for standing up to Rueda and Tucker, plaintiff does not state a claim for

8

retaliation. To state a First Amendment claim for retaliation, plaintiff must allege facts showing: (1) a state actor took an adverse action against him (2) because of (3) his exercise of protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). A prisoner's right to file a grievance is protected by the First Amendment. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). Plaintiff has the burden of showing that retaliation for the exercise of a protected right was the but-for factor behind the defendant's conduct. Hartman v. Moore, 547 U.S. 250, 258-60 (2006). Plaintiff fails to show how he exercised his First Amendment rights or that the exercise of those rights was the cause of the decision to transfer him.

**C. Doe Defendants**

Finally, plaintiff is advised that there is no provision in the Federal Rules of Civil Procedure for including unnamed defendants, also called "Doe" defendants, in a complaint. The use of Does in pleading practice is generally disfavored – but it is not prohibited. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999); Lopes v. Viera, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008). Plaintiff must make every effort to determine the identity of each defendant prior to filing a second amended complaint.

**CONCLUSION**

Above, this court finds plaintiff fails to state any claims for relief. Plaintiff will be given an opportunity to file a second amended complaint.

In a second amended complaint, plaintiff must address the problems with his first amended complaint that are explained above. Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated plaintiff's constitutional rights. The court is not required to review exhibits or other filings to determine what plaintiff's charging allegations are as to each named defendant. Plaintiff must include ALL claims he wishes to pursue in one amended complaint.

////

Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

Plaintiff may not bring claims against different defendants that are not related to each other. Fed. R. Civ. P. 20(a)(2). "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)). Simply alleging a "conspiracy" does not transform unrelated claims into related claims.

The federal rules require a simple description of a party's claims. Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's motion to amend the complaint (ECF No. 8) is granted.

4. Plaintiff's first amended complaint (ECF No. 7) is dismissed with leave to amend.

5. Plaintiff is granted sixty days from the date of service of this order to file an amended complaint that complies with the requirements of the Federal Rules of Civil Procedure and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint." Failure to file an amended complaint in accordance with this order may result in a recommendation that this action be dismissed.

6. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

Dated: April 23, 2024

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9/
DB prisoner inbox/civil rights/S/loke0494.scrn LTA